Assist. U. S. Dist. Attys. Tracy and Allen, for the Government.

Mr. Hollis, for the defence.

====== •

## Case No. 16,464.

UNITED STATES v. THIRTY-NINE THOUSAND ONE HUNDRED AND FIFTY CIGARS.

[3 Ware, 324.] [1]

District Court, D. Maine. Feb., 1866.

CUSTOMS DUTIES—ENTRY WITHOUT INVOICE—AUTHORITY OF COLLECTOR—FORFEITURES.

1. By the act of March 3, 1863, § 1 [12 Stat. 737], the collector has no power to permit an entry of merchandise unaccompanied by an invoice, or a sufficient excuse for its absence, but it gives the secretary of the treasury that authority, and the same equitable power of remission, as in other cases.

2. By that act, when goods are refused an entry for want of an invoice, if the owner thereof attempts to procure an entry by any false and fraudulent practice or appliance whatever, the goods are forfeited.

---

[1] [Reported by Geo. F. Emery, Esq., and here reprinted by permission.]

At law.

G. F. Talbot, U. S. Dist. Atty.
Mr. Butler, for claimant.

WARE, District Judge. This is a libel against 39,150 cigars, seized May 25, 1864, on board the brig Gertrude, Chase, master, from Matanzas, in Cuba, to this port. It seems the custom-house officers, in Portland, were expecting this vessel about this time, and, in consequence of information communicated to them, were suspicious that cigars on board were intended to be smuggled from her. She was boarded, from the cutter, in the night time, less than a mile from the light. The officer went on board of her and examined her manifest, and found five cases of cigars upon it, and found no others in the vessel and left her. But as there was no invoice or bill of lading they were seized. Two grounds of forfeiture are alleged in the libel, and are now relied on. First, that there was no invoice to accompany the cigars, and that there was an attempt to procure an entry by a false and fraudulent practice and appliance. That there was no invoice on board the vessel is not disputed, and that goods cannot be entered without one, or a sufficient excuse for the absence of one, is certain. The collector has no power to permit such entry, but by the act of March 3, 1863 (section 1), the secretary of treasury may authorize an entry on such terms, and in accordance with such regulations, general and special, as he may prescribe. Mr. Knowlton was at Matanzas when the cigars were put on board the Gertrude, and about that time returned to this country, but not in that vessel. Finding, on his return, the cigars not admitted to an entry, but seized, he applied to the collector to admit them, and offered his excuse for want of an invoice. The collector told him that he had no power to permit an entry, but that he must apply to the secretary of the treasury. Notwithstanding this answer, he persevered in his attempt to persuade the collector to permit an entry, and, for this attempt, a forfeiture of the goods is claimed. By the act of March 3, 1863 (section 1), when goods are refused an entry for want of an invoice, if the owner of the goods attempts to procure an entry by any false and fraudulent practice or appliance whatever, the goods are forfeited, but it gives to the secretary of the treasury the power to allow an entry, and the same equitable power of remission, as in other cases. This attempt to induce the collector to permit an entry, after the claimant knew he had not the power, is claimed as working a forfeiture of the goods, and, I think, justly. The words of the statute are very general and comprehensive, and seem to have been selected with a view to prohibit every attempt, by any means whatever, to effect an entry except by an application to the secretary, for any attempt must be fraudulent towards the United States.

A second ground of forfeiture, alleged in the

libel, and relied on at the hearing, is that they were not entered on such a manifest as is required by the act of March 2, 1799, § 24 [1 Stat. 646], the general collection law which has been in force and in constant use from the time that it was passed. The cigars were entered on a manifest deliverable to order, but it is plain that it was not a manifest containing all the particulars required by that law, and it was scarcely contended at the argument that it was. But the goods were on board the vessel without a bill of lading or an invoice, which alone would awaken very lively suspicions. According to the decision in The Larch [Case No. 8,085], in such a case, as to cigars they must be deemed consigned to the master, though entered as consigned to a particular person, much more when entered as consigned to order generally. But, besides, the entry on the manifest is suspicious on its face. It appears in a different ink from the general entry on the manifest, and seems to have been entered at a different time, and was so testified to by experts. If consigned to the master they are forfeited by that act.

There is a considerable amount of testimony taken in this case, with reference to what took place on the island of Cuba, both by the United States and the claimant, in the first instance to prove or render probable, a premeditated design to smuggle the cigars, and in the second place, to account for the want of a bill of lading and invoice for the cigars, from the circumstances under which the claimant became the owner of them. This testimony is, in some respect, contradictory. I have thought it unnecessary particularly to examine it, as I think there was a forfeiture under the count stated. It could not avail the claimant, even on his interpretation of it, except in an equitable view, and these considerations are addressed to another department and not to the court, and when fairly considered it leaves the claimant under a cloud of suspicion not very favorable to his claim. Decree of forfeiture.